### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
JOHN E. QUATROCHE, II,          :
                                :
      Plaintiff,                :
                                :
      v.                        :   Case No. 3:07CV1784(AWT)
                                :
EAST LYME BOARD OF EDUCATION;   :
SALEM BOARD OF EDUCATION;       :
CONNECTICUT STATE BOARD         :
OF EDUCATION; and CONNECTICUT   :
DEPARTMENT OF EDUCATION,        :
                                :
      Defendants.               :
------------------------------x
```

### <u>RULING ON MOTIONS TO DISMISS</u>

Plaintiff John E. Quatroche, II ("Quatroche") brings this action against the East Lyme Board of Education ("East Lyme Board"), the Salem Board of Education ("Salem Board") (collectively, the "town defendants"), the Connecticut State Board of Education ("CBOE"), and the Connecticut Department of Education ("CDOE")(collectively, the "state defendants"), alleging in Claim One, violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 <u>et</u> <u>seq.</u>, in the appeal of Case #07-224 as to all defendants; Claim Two, violation of the IDEA in the appeal of Case #07-277 as to all defendants; Claim Three, systemic violation of the IDEA as to the state defendants; Claim Four, violation of the IDEA FAPE ("Free Appropriate Public Education") as to the town defendants; Claim Five, violation of § 504 of the Rehabilitation Act as to the town

defendants; Claim Six, violation of ADA Title II as to the town defendants; Claim Seven, violation of 42 U.S.C. § 1983 based on the First Amendment as to the town defendants; and Claim Eight, violation of Quatroche's equal protection rights under the Connecticut State Constitution as to the town defendants.  The state defendants have moved to dismiss Claims One, Two, and Three.  Quatroche has withdrawn Claim Eight against the state defendants.  The town defendants have moved to dismiss Claims One, Seven and Eight.[1]  The motions do not address Claims Four, Five, and Six.  For the reasons set forth below, the East Lyme Board's motion to dismiss and the Salem Board's motion to dismiss are being granted as to Claim Seven and denied as to Claim One and Claim Eight.  The state defendants' motion to dismiss is being granted as to Claims One, Two, and Three, with leave to replead Claim Three.

## I.  **BACKGROUND**

   Quatroche is a special education student, who is "profoundly deaf" (Third Amended Complaint (Doc. No. 42)("Compl.") at ¶ 4) and has an identified specific language learning disability in

_____

[1] While the town defendants have filed separate motions and memoranda, they make substantially the same arguments.  The court thus will at times refer to the town defendants as a pair even if only one makes a certain argument.  (See, e.g., Defendant Salem Board of Education's Reply to Plaintiff's Objection to Motion to Dismiss (Doc. No. 52) at 1)(stating the town "hereby joins with defendant East Lyme Board of Education and adopts any and all Reply brief [sic] filed by the co-defendant, East Lyme Board of Education, as the issues against both parties are identical.")

the area of language.  "He communicates using speech and his
residual hearing as mitigated with his cochlear implants."
(Compl. at ¶ 14.)  At the time that this lawsuit was filed, he
resided "primarily in the Town of Salem, CT and secondarily in
the Town of East Lyme, CT."  (Id. at ¶ 4.)  East Lyme and Salem
share responsibility for providing Quatroche with a public
education.  From August 2004 through June 2008, he was enrolled
at East Lyme High School and his educational program at the high
school was primarily directed by a teacher of the hearing-
impaired, who was employed directly by Salem.  He was identified
as a student requiring special education and related services
under IDEA Individual Education Plans (IEPs) at age three, and
has been receiving these services since that time.  His IEP has
included the provision of captioning for all classes as a program
accommodation.  A captionist also served him at large group
meetings and assemblies.  He has had informal exposure to sign
language, but is not fluent in it either receptively or
expressively.  As of April 2007, school officials placed
Quatroche's reading skills at the fifth grade level.  Quatroche
avers that he has received "significant academic benefit from
watching captioned video in terms of improved reading ability,
increased vocabulary, and dramatically improved access to
information."  (Id. at ¶ 18.)    Every morning, East Lyme High
School broadcasts the "Morning Show" to the student body in each

-3-

classroom through the school's internal television network.
Lasting from five to ten minutes, the show normally includes
news, sports, weather, and entertainment segments.  According to
Quatroche, the show is one of the primary ways the students
receive information about what is going on at the high school.
Parts of the show are now subtitled; however, most of the audio
is not accessible to Quatroche.  Quatroche estimates he
understands only 50-60% of the information on the show, even with
the assistance, when available, of a teacher for the deaf.

In 2005, 2006, and 2007, Quatroche, through his mother, met
with the Salem and East Lyme Planning and Placement Team ("PPT")
and requested that captioning be provided for the Morning Show.
According to Quatroche, at each of those meetings, the chairs
tabled discussion concerning his requests. During the 2007
meeting, arguments in support of the request were heard, but
according to Quatroche the request was never documented by the
chair of those meetings or rejected under prior written notice in
the IEP developed at those meetings.  The IEP inaccurately stated
that "no other options were considered and rejected."  (Compl. at
¶ 32.)  Quatroche's mother was reassured each time, however, that
the adminstrators were working on the request.

On July 13, 2007, Quatroche and his parents filed a due
process complaint and request for an impartial due process
hearing regarding the captioning requests.  Attorney Deborah R.

-4-

Kearns ("Kearns") was appointed the hearing officer.  A pre-hearing conference was held on August 21, 2007 and a hearing date was set for September 13, 2007.  On August 31, 2007, the town defendants filed motions to dismiss.  Quatroche filed an opposition and a request for a hearing on the motions to dismiss. On September 13, 2007, the date scheduled for the hearing, Kearns announced, without hearing any testimony, allowing argument, or receiving exhibits, that the only issue presently before her was "[w]hether a Connecticut Department of Education, Individuals with Disabilities Education Act (IDEA) hearing officer has jurisdiction to decide a Section 504 of the Rehabilitation Act of 1973 matter if the Section 504 matter is the only issue in the claim for due process to be decided?".  (Id. at ¶ 57.)  Deciding in the negative, she said she did not have jurisdiction to hear such a matter.  Her decision relied on the second footnote of a letter issued by the Commissioner of Education to Superintendents of Schools.  See Theodore S. Sergi, Circular Letter: C-9, Series 2000-01, Reissue, available at www.sde.ct.gov/sde/lib/sde/pdf/ circ/circ00-01/c9.pdf ("Circular C-9").  The footnote stated that hearing officers "will not hear what is commonly referred to as 'Section 504 only cases', but will do a review of Section 504 claims if the Mrs. L [consent decree] requirements are met, i.e., that a determination of a Section 504 claim is necessary to the resolution of the issues."  The final decision on the plaintiff's

first request for a due process hearing was dated September 18, 2007 and was mailed the next day.  On November 5, 2007, Quatroche filed a Motion for Leave to Proceed in Forma Pauperis (IFP)(See Doc. No. 1.)  The motion was granted on December 5, 2007.  (See Doc. No. 2.)

In addition, Quatroche filed a second Request for Impartial Special Education Hearing on August 29, 2007.  The request was based on an August 24, 2007 letter that Quatroche had received stating that the minutes from his April 2007 PPT meeting were "not fully filled out" and enclosing "an updated copy of those PPT minutes."  (Compl. at ¶ 61.)  According to Quatroche, the IEP copy was not updated but backdated and was "an altered version reflecting IEP team decision-making that never occurred. . . ." (Compl. at ¶ 62.)  This version stated that Quatroche had been denied the requested Morning Show accommodation during the original April 2007 meeting for "vague reasons unsupported by Plaintiff's educational record." (Compl. at ¶ 63.)  Quatroche wanted a hearing regarding the irregular IEP alteration, and because the IEP team had not reconvened nor had it obtained the consent of Quatroche to revise the IEP as required by the IDEA, as this matter related to both his educational placement and the provision of his FAPE.  Elisabeth Borrino ("Borrino") was appointed the hearing officer.

Borrino also did not hold a hearing, but issued a written

decision citing the doctrines of res judicata and collateral estoppel, stating that "[s]ince the issue herein is the same one already heard and decided by a hearing officer in a prior due process hearing, this matter must be dismissed." (Compl. at ¶ 76.)

Quatroche exhausted the administrative remedies available to him under the IDEA.  He filed a related complaint with the Department of Education Office of Civil Rights ("OCR").  OCR commenced an investigation, but terminated the investigation, as required by its governing regulations, when Quatroche exercised his appeal rights under the IDEA by filing suit.

## II. <u>LEGAL STANDARD</u>

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corporation v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true

(even if doubtful in fact)." <u>Id.</u> (citations omitted).  The
plaintiff must plead "only enough facts to state a claim to
relief that is plausible on its face." <u>Id.</u> at 1974.  "The
function of a motion to dismiss is 'merely to assess the legal
feasibility of the complaint, not to assay the weight of the
evidence which might be offered in support thereof.'" <u>Mytych v.</u>
<u>May Dept. Store Co.</u>, 34 F. Supp. 2d 130, 131 (D. Conn. 1999),
<u>quoting</u> <u>Ryder Energy Distribution v. Merrill Lynch Commodities,</u>
<u>Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984).  "The issue on a motion
to dismiss is not whether the plaintiff will prevail, but whether
the plaintiff is entitled to offer evidence to support his
claims." <u>United States v. Yale New Haven Hosp.</u>, 727 F. Supp 784,
786 (D. Conn. 1990) (citing <u>Scheuer</u>, 416 U.S. at 232).  In its
review of a motion to dismiss for failure to state a claim, the
court may consider "only the facts alleged in the pleadings,
documents attached as exhibits or incorporated by reference in
the pleadings and matters of which judicial notice may be taken."
<u>Samuels v. Air Transport Local 504</u>, 992 F.2d 12, 15 (2d Cir.
1993).

## III.  <u>DISCUSSION</u>

### <u>A. Claim One – Town Defendants</u>

The town defendants argue that Claim One should be dismissed
as to them because the appeal of the plaintiff's first request to
the CDOE is untimely and thus the court is deprived of subject

matter jurisdiction.  The town defendants argue that the first
request for hearing was required to be filed no later than
November 3, 2007, 45 days after the CDOE mailed the order
dismissing the case on September 19, 2007.  Quatroche counters
that this date fell on a Saturday, and that under Fed. R. Civ.
Proc. 6(a)(3), the last day of the limitations period was Monday,
November 5, 2007.  East Lyme has since conceded this point.  On
that day, Quatroche filed a motion for leave to proceed in forma
pauperis.  He contends this tolled the limitations period until
the court ruled on the motion.  The motion was granted on
December 5, 2007.  The town defendants argue that under the IDEA,
state law controls for purposes of the statute of limitations,
and that an action is not commenced for statute of limitations
purposes until the defendant is served with process.

"Under IDEA, if a party is dissatisfied with the outcome of
a state educational agency's due process hearing, that party may
take an appeal by filing a civil action in federal district
court."  Brennan v. Regional School Dist. No. Bd. of Educ., 531
F. Supp. 2d 245, 257 (D. Conn. 2008).  "If state law provides a
time limit for bringing appeals in IDEA cases, that time limit
must govern."  Id., citing 20 U.S.C. § 1415(i)(2)(B).  In
Brennan, the court noted that Connecticut law does provide a time
limit.  See id., citing Conn. Gen Stat. § 10-76h(d)(4)
(explaining that "[a]ppeals from the decision of the hearing

-9-

officer . . . [in an IDEA case] shall be taken in the manner set forth in [Conn. Gen. Stat. §] 4-183. . . .").  The applicable statute states that an appeal must be taken within 45 days of the mailing of the final decision.  <u>See</u> Conn. Gen. Stat. § 4-183(c).  The court must apply Connecticut's time limits, as set forth in Conn. Gen. Stat. § 4-183(c).  <u>See</u> <u>Brennan</u>, 531 F. Supp. 2d at 258.  Neither party disputes that the 45 day time limit for the appeal controls.

In <u>West v. Conrail</u>, the Supreme Court observed that "when the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been 'commenced' in compliance with Rule 3 within the borrowed period."  481 U.S. 35, 39 (1987).  Although the Court observed that it is sometimes required to "close interstices in federal law[,] . . . when it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than necessary."  481 U.S. at 39-40.  The Second Circuit provided the rationale: "[w]hen a federal court borrows a state statute of limitations . . . the court is not applying state law; it is applying federal law."  <u>Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel</u>, 145 F.3d 85, 88 (2d Cir. 1998)(citation omitted).  "Thus, it is the duty of the federal courts to assure that the

importation of state law will not frustrate or interfere with the implementation of national policies." Id. (internal citation and quotation omitted).

The Federal Rules of Civil Procedure apply to service of process under the IDEA. See A.P. ex rel. Powers v. Woodstock Bd. of Educ, No. 07-CV-833(MRK), 2007 WL 3024355, at *2 (D. Conn. Oct. 16, 2007) ("[I]t is the Federal Rules of Civil Procedure, not state law, that govern the service requirements once an [IDEA] action is filed in federal court."). In A.P., a town board of education argued that the district court lacked jurisdiction because the plaintiffs had failed to serve notice of their appeal on the CDOE within 45 days of the mailing to them of the final decision even though they had served notice on the town board of education. The court disagreed, relying on West, and noting that while strict compliance with relevant state statutes of limitations may be required to maintain an IDEA action, it was incorrect to assume that a district court must also adopt the service requirements of the state statute. See id. at *2. The court observed that "[t]he only aspect of Connecticut's state law that federal courts must borrow under the IDEA is the time limit for filing IDEA actions in federal courts. Nothing in the IDEA itself implicitly or explicitly requires the application of the entirety of § 4-183(c) to IDEA actions filed in federal court. . . ." Id. See also S.J. v. Issaquah Sch. Dist. No. 411, 470 F.3d

1288, 1293 (9th Cir. 2006) (holding that a federal court borrowing a state time period for filing an IDEA claim "should not also borrow the state's time limits for serving the complaint"); <u>J.G. ex rel. J.G. v. Board of Educ. of Briarcliff Manor Union Free School Dist.</u>, No. 07-CV-7245(KMK), 2008 WL 3843523, *4 (S.D.N.Y. Aug. 14, 2008)(same).

In <u>Toliver v. County of Sullivan</u>, the Second Circuit held that when a motion for leave to proceed in forma pauperis is filed within the limitations period, and it is granted, "the action should be treated as timely, provided the complaint was received by the clerk's office prior to the expiration of the limitations period."  841 F.2d 41, 42 (2d Cir. 1998).  Based on the foregoing, the court concludes that Quatroche filed his appeal in a timely manner as he filed in on the last day of the limitations period.

East Lyme argues that reliance on <u>Toliver</u> is misplaced because the lawsuit there was filed pursuant to Title VII of the Civil Rights Act of 1964, which contains a statute of limitations, whereas here, each state's statute of limitation applies.  The town defendants rely instead on <u>Hughes v. Equity Office Properties Trust</u>, No. 302CV2177(RNC), 2005 WL 2416183, (D. Conn. Sept. 30, 2005).  There the court observed that "[t]he Connecticut Supreme Court has held that an action is commenced for statute of limitations purposes only when the defendant is

served with process." Id. at *1.  However, Hughes was a
diversity case and not a federal question case where the federal
claim happened to not have a statute of limitation.  The other
unpublished decisions cited by the defendants were also based on
state law claims.  See, e.g., Langer v. Wines Unlimited, No.
CV020396415, 2003 WL 21185952, (Conn. Super. Mar. 27, 2003);
Pereira v. Maresca, No. CV000378076, 2002 WL 1446682 (Conn.
Super. June 4, 2002); Goodrum v. New Haven Police Dept., No.
CV950370342S, 1996 WL 704377 (Conn. Super. Nov. 26, 1996).  Thus,
the court finds them unpersuasive as to the issue presented here.

Therefore, the town defendants' motions to dismiss Claim One
are being denied.

### B. Claims One and Two – State Defendants

The state defendants argue that the they are not the
appropriate parties in a special education appeal because hearing
officers are neither employees nor state actors.  Quatroche
contends 1) that he was improperly denied a due process hearing
based upon the jurisdictional challenges by the town defendants,
and 2) that these challenges were based on the state defendants'
unlawful policy promulgated by Circular C-9.  Quatroche argues
that "[t]his issue is separate from but directly related to the
appeals of two IDEA hearing officers' decisions (Claims One and
Two) and thus is brought as part of the same case or
controversy."  (See Memorandum of Law in Support of Plaintiff's

Motion in Opposition to Defendants Connecticut State Board of Education and Connecticut Department of Education Motion to Dismiss (Doc. No. 35)("Pl.'s State Opp.") at 5-6.)  The court disagrees.  The facts of Quatroche's individual hearing processes may bear upon an analysis of the state policy in general.  But as pled, these claims are appeals of special education due process hearings, and the state is thus not a necessary nor appropriate party.

Under Conn. Gen. Stat. § 10-76h(c)(1), the CDOE is charged with appointing an impartial hearing officer for a special education hearing.  In the complaint, Quatroche restates the law that the State Education Agency (SEA) must provide an impartial due process hearing.  (See Compl. at ¶ 99, citing 20 U.S.C. § 1415(f) and (b)(6).)

The hearing officers are not employees of the state defendants.  "State Defendants are not liable for the decision, even though erroneous, on the part of an independent, impartial hearing officer.  Liability may not flow from decisions over which State Defendants have no control and cannot legally influence." Fetto v. Sergi, 181 F. Supp. 2d 53, 72 (D. Conn. 2001), quoting Lillbask v. Sergi, 117 F. Supp. 2d 182, 192 (D. Conn. 2000)(noting that "any claim of legal error on the part of the hearing officer should procedurally flow against [the town] Defendants").  There is no basis upon which relief can be granted

-14-

against the state defendants with respect to these claims, and the motion to dismiss is being granted as to them.

### C. Claim Three – Systemic IDEA Violation

The state defendants argue that the plaintiff's complaint fails to plead adequately a systemic claim implicating the integrity of Connecticut's IDEA dispute resolution process.  The court agrees.

While states are not responsible for hearing officer decisions, the state "is responsible for assuring that the requirements of the IDEA are carried out. . . ."  <u>Fetto</u>, 181 F.Supp.2d at 64 (citation omitted).  In Connecticut, the law provides that "[t]he hearing officer or board shall hear testimony relevant to the issues in dispute offered by the party requesting the hearing and any other party directly involved, and may hear any additional testimony the hearing officer or board deems relevant."  Conn. Gen. Stat. § 10-76h(c)(3).

A systemic claim is one which "implicates the integrity of the IDEA's dispute resolution procedures themselves, or requires restructuring of the education system itself in order to comply with the dictates of the [IDEA]."  <u>Fetto</u>, 181 F. Supp. 2d at 72 (D. Conn. 2001), <u>quoting</u> <u>Mrs. M. v. Bridgeport Board of Educ.</u>, 96 F. Supp. 2d 124, 133 n.12 (D. Conn. 2000).  The claim must allege "a pattern and practice of systematic [IDEA] violations unable to be addressed at the due process hearings provided in

Connecticut." Mrs. W. v. Tirozzi, 832 F.2d 748, 757 (2d Cir.
1987). See also Doe By and Through Brockhuis v. Arizona Dept. of
Educ., 111 F.3d 678, 682 (9th Cir. 1997)(noting that a claim "is
not 'systemic' if it involves only a substantive claim having to
do with limited components of a program, and if the
administrative process is capable of correcting the problem.")
The state education agency is a proper party to actions involving
claims of systemic violations of the IDEA, as the state
defendants acknowledge. See Yamen v. Board of Education of the
Arlington Central School District, 909 F.Supp. 207, 210 (S.D.N.Y.
1996).

        Quatroche argues that the state defendants have
"systemically and unlawfully limit[ed] IDEA Hearing Officer
jurisdiction to hear IDEA mandated due process claims when there
is overlap with jurisdiction under the Rehabilitation Act of
1973, § 504 as evidenced by Hearing Officer Kearns' decision in
case #07-224." (Compl. at ¶ 102.) This is based on a footnote
in Circular C-9, which states that state hearing officers "will
not hear what is commonly referred to as 'Section 504 only
cases', but will do a review of Section 504 claims if the Mrs. L
[consent decree] requirements are met, i.e., that a determination
of a Section 504 claim is necessary to the resolution of the
issues." Circular C-9, n.2. Quatroche also connects state
action to the hearing process by alleging that the state

defendants provided training and guidance to the IDEA Hearing Officers "to reinforce the Circular Letter C-9 restrictions on their jurisdiction." (Compl. at ¶ 105.) Quatroche's prayer for relief requests, <u>inter alia</u>, a declaration that Circular C-9 "violate[s] the procedural safeguards required by 20 U.S.C. § 1415" and an order that the CDOE withdraw it. (Compl. at § IV.)

The court finds that Quatroche has failed to adequately plead a systemic violation claim. First, Quatroche misstates Circular Letter C-9 when he alleges that it systemically and unlawfully limits IDEA Hearing Officer jurisdiction to hear IDEA mandated due process claims when there is "overlap" with Section 504. (<u>See</u> Compl. at ¶¶ 102, 104.) Rather, Circular C-9 states that hearing officers "will do a review of Section 504 claims if . . . a determination of a Section 504 claim is necessary to the resolution of the issues." Circular C-9, n.2.[2]

---

[2] The court notes that the state defendants also argue that "[b]ecause the IDEA does not require due process hearings to be held with respect to claims that involve solely § 504 issues, nothing on the face of the C-9 letter violates the procedures set forth in the IDEA." (State Defendants' Reply Brief (Doc. No. 54)("State Reply") at 4-5.) The state defendants argue that the pertinent analysis is found under <u>Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley</u>, 458 U.S. 176 (1982), and the question is whether "the State complied with the procedures set forth in the [IDEA]. . . . If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." <u>Id.</u> at 206-207. However, on the specific question of whether the IDEA requires due process hearings to be held with respect to claims that involve solely § 504 issues, the state defendants cite only

Second, Quatroche alleges that "[r]equiring a '504 only' determination as a threshold jurisdictional bar, where such is clearly in dispute, completely defeats the student's rights to an impartial decision within 45 days of filing the due process request . . . based on a hearing. . . ."  (Compl. at ¶ 103.) However, Quatroche does not explain how it can be improper for a hearing officer to make a determination as to whether she has jurisdiction over a claim before proceeding to adjudicate the claim.

Third, Quatroche has not pled a causal connection between the fact that CDOE provided training to state IDEA hearing officers and any systemic violation.  Quatroche alleges that "[o]n information and belief, CDOE provided training to state IDEA Hearing Officers, including hearing officers Kearns and Borrino, to reinforce the Circular Letter C-9 imposed restrictions on their jurisdiction." (Compl. at ¶ 105.)  Here, Quatroche has not pled "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S.Ct. at 1974.

Under the IDEA, the state is charged with assuring that all IDEA hearing officers are trained.  See Conn. Gen. Stat. § 10-76h(c)(1)("The Department of Education shall provide training to hearing officers in administrative hearing procedures, including due process, and in the special educational

---

to Circular C-9.

needs of children.").  Further:

> To sustain a claim of a systemic violation, Plaintiff would have to allege that a lack of training has rendered the process of handling IDEA claims non-compliant with due process hearing in a substantial number of other proceedings, thus calling into question the resolution process in general. Without more, there is no reason to assume that such training is necessary or that its lack systemically contributes to due process violations.

Canton Bd. of Educ. v. N.B., 343 F.Supp.2d 123, 128 (D. Conn. 2004).  Therefore, the motion to dismiss as to the systemic violation claim with respect to the state defendants is being granted, with leave to replead within 30 days.

### D. Claim Seven — Town Defendants

In Claim Seven, the plaintiff alleges that "[t]he First Amendment of the U.S. Constitution protects Quatroche's right to receive all the information and ideas presented in the 'Morning Show' broadcast."  (Compl. at ¶ 157.)  Quatroche argues that the Morning Show is a limited public forum for student speech provided by the town defendants for the educational benefit of the East Lyme High School body.  Thus, he argues, when the school broadcasts the show without captions, it constitutes an unlawful infringement on his First Amendment rights.  (See Compl. at ¶¶ 157-58.)  The town defendants argue that the Morning Show is a nonpublic forum, that the First Amendment does not require that affirmative steps be taken to ensure access to information, and that even if the failure to provide captioning is a manner restriction, it is a permissible one.

-19-

Part of Quatroche's complaint is that the Morning Show "is one of the primary ways the students receive information about what is going on at East Lyme High School." (Compl. at ¶ 23.) The initial inquiry, then, is the scope of the right to receive this information.  The First Amendment provides that "Congress shall make no law abridging the freedom of speech, or of the press." U.S. Const. amend. I.  The corollary to the guarantee of free speech is that "there be full opportunity for everyone to receive the message."  Young v. American Mini Theaters, Inc., 427 U.S. 50, 76  (1976) (Powell, J. concurring) quoted in Application of Dow Jones & Co., Inc., 842 F.2d 603, 607 (2d Cir. 1988); Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, 425 U.S. 748, 756 (1976) (noting that where there is a willing speaker, First Amendment protection extends to both the source as well as the recipient of the protected communication).  The right to receive information and ideas is particularly important for students.  As Justice Brennan recognized, "such access prepares students for active and effective participation in the pluralistic, often contentious society in which they will soon be adult members."  Board of Educ. v. Pico, 457 U.S. 853, 868 (1982)(plurality opinion).

The level of judicial scrutiny that must be applied to state actions inhibiting speech varies with the nature of the forum in which the speech occurs.  See Peck ex rel. Peck v. Baldwinsville

Central School Dist., 426 F.3d 617, 625 (2d Cir. 2005)(internal
citation omitted).  The parties disagree about whether what is
involved here is a limited public forum or if the Morning Show
takes place in a nonpublic forum setting.

> A "designated public forum" is a place not traditionally
> open to public assembly and debate--a public school, for
> example--that the government has taken affirmative steps
> to open for general public discourse. Speech in a
> designated public forum is entitled to the same
> constitutional protection as that extended to expression
> in a traditional public forum, so long as the state
> continues to designate the forum for such use.  A
> "limited public forum," instead, is created when the
> State opens a non-public forum but limits the expressive
> activity to certain kinds of speakers or to the
> discussion of certain subjects. In limited public fora,
> the government may make reasonable, viewpoint-neutral
> rules governing the content of speech allowed.

Id. (internal citations and quotations omitted).  Nonpublic fora
receive the lowest level of scrutiny.  These fora are "neither
traditionally open to public expression nor designated for such
expression by the State.  Restrictions on speech in a nonpublic
forum need only be reasonable and viewpoint neutral."  Id. at
626. (internal quotations omitted).

In support of their argument that the Morning Show is a
nonpublic forum, the town defendants cite Hazelwood School Dist.
v. Kuhlmeier, 484 U.S. 260 (1988).  In that case, the Court
upheld the decision of a high school principal to censor a
student newspaper.  The court noted that school facilities may be
deemed to be public fora only if school authorities have "by
policy or by practice" opened those facilities "for

-21-

indiscriminate use by the general public." Id. at 267.  The
court determined in Hazelwood that school officials had "reserved
the forum for its intended purpose" as a supervised learning
experience for journalism students and therefore applied the
reasonableness standard for nonpublic fora.  Id. at 270.  The
town defendants also cite Perry Educ. Ass'n v. Perry Local
Educators' Ass'n, 460 U.S. 37 (1983).  In Perry, a case involving
access to a school district's internal mail system, the Supreme
Court concluded that "the schools do allow some outside
organizations such as the YMCA, Cub Scouts, and other civic and
church organizations to use the facilities[, but] [t]his type of
selective access does not transform government property into a
public forum."  Id. at 47.

The complaint gives a brief description of the format of the
Morning Show:

> Each day, East Lyme High School broadcasts the 'Morning
> Show' through the school's internal television network.
> This closed circuit program is normally shown daily to
> the entire student body in each classroom for the first
> five or ten minutes of second period.  The show normally
> includes news, sports, weather, and entertainment
> segments.  This show is one of the primary ways the
> students receive information about what is going on at
> East Lyme High School.  It is a forum provided for
> student discourse.

(Compl. at ¶ 23.)

Based on the foregoing, the Morning Show is a nonpublic
forum.  Thus, the restrictions on speech need only be reasonable
and viewpoint neutral.  Because Quatroche has pled this claim

-22-

based on the Morning Show being a limited public forum, the
motions to dismiss are being granted as to this claim.

### E. Claim Eight - Connecticut Constitution Equal Protection

The town defendants argue that "[a]s Count Eight is a mere
reformulation of the plaintiff's IDEA claim, set forth in Count
Four, it should be dismissed."  (Reply to Plaintiff's Opposition
to East Lyme's Motion to Dismiss (Doc. No. 53)("East Lyme Reply")
at at 7.)  In support of this argument, the town defendants cite
Garro v. State of Connecticut, 23 F.3d 734 (2d Cir. 1994).  In
Garro, the Second Circuit noted that the district court dismissed
a state law claim for intentional infliction of emotional
distress on the grounds "that a pendent state law claim cannot be
pled in an appeal of a hearing officer's decision where it is a
simple reformulation of an IDEA claim."  Id. at 737.  The court
observed that the plaintiff admitted the claims overlapped, and
that the plaintiff did not offer competing authority that would
lead the court to decline to follow the practice of dismissing
pendent state claims in IDEA cases.  Id.  The court added that
the district judge "would have been well within his discretion in
declining to exercise pendent jurisdiction over the state law
claim after dismissing all but an insubstantial federal claim."
Id.

Quatroche's case, however, does not entirely turn on the
rights created by statute in the IDEA.  See, e.g., Gabel ex rel.

L.G. v. Board of Educ. of Hyde Park Central School Dist., 368 F.Supp.2d 313, 333 (S.D.N.Y. 2005)(stating that "IDEA and Section 504 are complementary, but they address different injuries and thus require different proof."). Quatroche also has claims under Title II of the ADA and § 504 of the Rehabilitation Act. These are not "insubstantial federal claim[s]". Garro, 23 F.3d at 74.

The town defendants also argue that there is no state law equal protection state claim available to Quatroche. In Smith v. Robinson, the Court noted that Congress perceived the IDEA as "the most effective vehicle for protecting the constitutional right of a handicapped child to a public education." 468 U.S. 992, 1013 (1984). It concluded that the IDEA was "the exclusive avenue through which the child and his parents or guardian can pursue their claim." Id. Congress later amended the IDEA to provide that "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 . . . title V of the Rehabilitation Act of 1973 . . . or other Federal laws protecting the rights of children with disabilities. . . ." 20 U.S.C. 1415(l). Thus, "[t]he clear intent of Congress was to negate Smith." Barbara R. v. Tirozzi, 665 F.Supp. 141, 144 (D. Conn. 1987). Absent from the amendment is any mention of allowing pendent state law claims in a federal IDEA action. Thus it appears that Smith remains good law with

respect to state law claims pendent to an IDEA claim.  Here, however, the plaintiff's state law claim is also pendent to his § 504 and ADA claims against the town defendants.[3]  This point has not been addressed by the parties.  Therefore, the motions to dismiss Claim Eight are being denied without prejudice.

IV.  **CONCLUSION**

For the reasons set forth above, the East Lyme Board's Motion to Dismiss (Doc. No. 24) and the Salem Board's Motion to Dismiss (Doc. No. 25) are hereby GRANTED with respect to Claim Seven and DENIED with respect to Claim One and Claim Eight.  The State Defendants' Motion to Dismiss (Doc. No. 26) is hereby GRANTED in its entirety, but with leave to replead Claim Three within 30 days.

It is so ordered.

Dated this 30th day of March 2009 at Hartford, Connecticut.


_____
                /s/ AWT
            Alvin W. Thompson
      United States District Judge

---

[3] It appears the town defendants took the position that the plaintiff's case was a "Section 504 only case" when the state hearing officer dismissed Quatroche's due process complaint.